No. 20,355.

ALEXANDER D. JACKS et al., *Appellants,* v. EMILY C. MASTERSON et al., *Appellants,* and OTTO FREEMAN and VIETTA FREEMAN, *Appellees.*

### SYLLABUS BY THE COURT.

1. CONTRACT—*Husband and Wife Orally Agree to Take Infant Child Into Their Family as Their Own Child and Heir—Specific Performance—Partition—Cross-petition States Cause of Action.* In a suit for partition of real estate between the collateral heirs of a deceased person, the appellee filed a cross-petition in which she claimed to be the owner of the real estate by virtue of the full performance on her part of a contract, which she alleged was entered into on the one part by the deceased and his wife in their lifetime, and on the other part by her father when she was a child ten months old, by which her father surrendered to them full control and custody of her in con-

sideration of which they agreed to take her into their family as their own child and heir. The cross-petition then alleged "that said contract so entered into . . . was evidenced by the following written instrument executed and delivered by" the parties, and set out a copy of the instrument which showed on its face that it had been executed and delivered by her father alone, although in the handwriting of the owner of the real estate. *Held,* that the trial court properly construed the cross-petition in its entirety as stating a cause of action founded upon a parol agreement, and as though it had alleged the existence of the written memorandum as some evidence of the terms of such parol agreement.

2. SAME — *Instructions — No Prejudicial Error.* In the cross-petition mentioned in the preceding paragraph it was not alleged that there was an agreement to adopt the appellee, nor was there any proof of a contract to adopt. There was, however, proof sufficient to sustain a finding of a parol contract by which the deceased and wife agreed, that in consideration of the father relinquishing his right to the appellee and the full discharge by her of a child's duty to them, they would take full control and custody of her as their own child and heir. The court instructed that appellee would be entitled to recover if the jury found from the evidence that there was an agreement to adopt and make her their heir. *Held,* there was no prejudicial error in the giving of the instruction, inasmuch as the rights of appellee to recover under the agreement proved were no different than they would have been under a contract to adopt and make her their heir.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed November 11, 1916. Affirmed.

*O. L. Miller, C. A. Miller,* and *Samuel Maher,* all of Kansas City, for the appellants.

*David F. Carson* and *James T. Cochran,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

PORTER, J.: William Jacks, a resident of Wyandotte county, died intestate on October 11, 1913, owning a farm of about 123 acres on which he had lived since 1868. He was ninety-one years of age at the time of his death; his wife had died in 1908 at the age of seventy-six, and they had no children of their own. William Jacks left surviving him a number of brothers and sisters, and descendants of deceased brothers and sisters. This

action was commenced as a friendly suit by two of his brothers for partition of the land among the collateral heirs. An amended petition joined as defendants Vietta Freeman and her husband. Vietta Freeman claimed to own the land in her own right, and in a cross-petition set out the facts which she claimed worked a transfer of the property to her. The case was submitted to a jury. A general verdict and special findings were returned in appellee's favor, and judgment was rendered decreeing her to be the owner of all the property of which William Jacks died seized. The collateral heirs, some of whom are plaintiffs and some defendants, are the appellants.

Vietta Large was born December 6, 1876. Her mother died when she was less than ten months old. At the time William Jacks and Mary Jacks were past the age when they could expect children of their own. They had for some time wanted to find a suitable child to take into the family and raise as their own. They had said they desired to get a child so young that it would never know that it was not their child. An acquaintance of theirs who knew their desires told them about Vietta Large. They took her to their home when she was ten months old. She lived with them until she was sixteen years old, when she was married to Otto Freeman at the home of William Jacks. The marriage license described her as Vietta Jacks, the name she was known by during her childhood. They treated her as their child, sent her to school, and she returned to them the service, obedience and affection of a child for parents. She assisted them in their sickness, worked about the house and occasionally in the fields. A colored woman who had formerly been a slave in the Jacks family testified that she lived with the family for fourteen years during the time Vietta was there and that the relations between Vietta and William Jacks and Mrs. Jacks were characterized by love and affection; that they always treated her as their own child. They usually called her "Hun" and she called them "Papa" and "Mamma." After her marriage she and her husband lived for about a year and a half with Mr. and Mrs. Jacks. They then moved to a house on the same farm, which Mr. Jacks built for them, and remained there about three years. They then moved to a farm in the neighborhood where they remained for several years, when

they returned to the Jacks farm to live. Mrs. Jacks- was an invalid for about a year before her death and required a good deal of personal attention and care. The appellant went back and forth to the Jacks home helping with the cooking and household duties and assisting in the care of Mrs. Jacks. After the death of Mrs. Jacks the Freemans leased the farm, Mr. Jacks requiring them to sign a written lease each year. They paid a yearly rent of $300 and in addition furnished him with board, and he lived with them, having a room of his own.

One of the principal contentions made by the appellants relates to the pleadings. In her cross-petition the appellee alleges in paragraph two that she became the holder of the legal and equitable title to the real estate in question "under and by virtue of a certain contract and agreement entered into with William Jacks, and M. A. Jacks, both deceased, and H. P. Large," her father, under which her father delivered over to them full care, control and custody of her when she was a child of ten months, her father then and there relinquishing all right to control her as his child, in consideration of which, and her discharging her duty thereafter to them as though she was their own child, they then and there agreed to take full care, control and custody of her "as their own child and heir in every and all respects whatever to all intents and purposes," and agreed that they would give her their property at the time of their death, "and to effectuate said intents and purposes repeatedly stated that they intended to adopt" her. The third and fourth paragraphs of the cross-petition read as follows:

"3. That on or about the 14th day of January, A. D. 1878, the said contract so entered into by said H. P. Large of the one part and said William Jacks and M. A. Jacks of the other part was evidenced by the following written instrument executed and delivered by said H. P. Large and said William Jacks and M. A. Jacks, a true copy of which is as follows, to-wit: . . .

"4. 'Baby Vietta Large was born near Monticello, Jackson County, Kansas, on December 6, 1876. Her mother departed life in Edwardsville, September 6, 1877, leaving .her father, H.. P. Large, a floating resident of Wyandotte County, Kansas, at which time the above mentioned (Vietta Large) was turned over to Wm. Jacks and M. A. Jacks, his wife, residents - of the last mentioned county and state, to have the full care, control and custody as their own child and 'air' in every and all respects whatever to all intents and purposes and her kinsmen residing in Kansas. Julia and Baker P. Near, Conner Station. Her aunt married to Robert Baker-

Jacks v. Masterson.

Kinsman in Greenup County, Kentucky, are as follows: Janey Merrill married to John W. Merrill (her aunt and uncle) on her mother's side. Mother's maiden name was (Nancy Elizabeth True Back) on the father's side in Michigan names as follows, (Joseph Large and family residents Berrian County) postoffice in Dowagiac, Cass Mich. One aunt in Franklin Co., Mo. 'name' Cerepta A. Pope.

Given under my hand this the 14th day of January, A. D. 1878.

H. P. LARGE.

Witness
      his
Albert  ×  Haynes.
   mark.' "

Paragraph six states "it being understood in said contract that" appellee "was to be treated by said William Jacks and wife as their child" and that appellee "would through life render to them the same love, affection, obedience and service as though she had been their own child." In this paragraph it is further alleged that she fully complied in every particular with the contract on her part and remained in the custody and control of her foster parents until her marriage, which was with the full knowledge and consent of her foster parents, the marriage license having been issued under the name of Vietta Jacks.

In another part of the cross-petition it is alleged that the foster parents repeatedly reaffirmed and recognized the terms of the contract by which appellee had been taken into the family and again promised and agreed with her that if she would continue to remain with them, render to them the obedience, affection and service of a daughter, they would fully carry out the terms of the contract, and further allege that she rendered full obedience, service and affection and assisted them in all their sickness without receiving any compensation therefor.

The memorandum set out in paragraph four of the cross-petition was produced at the trial and the evidence showed that it was kept in the family from the time appellee was taken there, and that it was regarded as one of the family records. It was kept in what was known as the "black book." Although it was not signed either by William Jacks or his wife, it was in the handwriting of William Jacks. It was signed by H. P. Large, the father of Vietta. William Jacks had served several terms as justice of the peace, and was in the habit of drawing

conveyances and other instruments for neighbors. He had some acquaintance with legal terms, which doubtless accounts for some of the phraseology of the instrument. In their answer to the cross-petition appellants alleged that the words "and 'air' " (heir) which were interlined in the instrument were forgeries, and at the trial offered evidence of expert witnesses tending to show that these words were in a different handwriting. The jury by their general verdict have found there was no alteration in the instrument. They also found that William Jacks required the father of the little girl to sign the memorandum. Witnesses who had often visited the Jacks family testified to conversations with William Jacks in which he showed them the "black book" and said "this is the contract I had to write up to get our baby"; "I will show you the contract I had to draw up to get 'Hun.' " One witness testified that Mr. Jacks said he "had to make those provisions before Large would relinquish his right to her."

The answer to the cross-petition, besides a general denial, alleged that if there ever was any agreement made by William Jacks to take the appellee into his family and treat her as his own child and heir and leave her his estate at his death in consideration of her living with him and rendering services to him and his wife as if she was their own child, she had failed to keep and perform the agreement on her part and had repudiated and abandoned it when she was sixteen years old, and that she had sorely disappointed and grieved William Jacks by refusing to accept and follow his counsel and advice with regard to entering into marriage relations too early in life and with a man objectionable to him; that she was not only an undutiful child but that at all times after her marriage was cold and indifferent towards him. There was a conflict of evidence on all these matters, but there was sufficient evidence to sustain the verdict and judgment, unless, as appellants claim, prejudicial error was committed in the trial of the case.

The principal contentions of the appellants are that the appellee was permitted to recover upon a theory neither alleged in her cross-petition nor proved. The appellants claim that confusion reigned at the trial because it was assumed by the court that the appellee claimed under a parol contract to adopt and to leave property, while they insist that in fact she

expressly pleaded a written contract which said nothing whatever either about adoption or leaving property. It is urged that the court assumed, without warrant, that what is called paragraph two of the cross-petition stated an independent cause of action resting in parol, and therefore that the court erred in submitting to the jury the question whether the evidence showed a promise that appellee would be adopted as the child of William Jacks and made his heir.

In the statement of facts contained in the brief of the appellee, the theory upon which she recovered judgment is conceded to be as the appellants claim, that is, upon the theory of an oral contract between her father and William Jacks, by which she was to be taken into his family, and in consideration of her giving to him and his wife the affectionate obedience of a child, they would adopt her and give her their property at their death. The court gave an instruction as follows:

"9. Even if you find from the evidence that the writing contained in the black book marked Exhibit '3' was written by William Jacks in the same words and with the same interlineations as now appear therein it would not of itself entitle said Vietta Freeman to recover a verdict herein but it may only be considered by you together with all the other evidence in the case in determining whether or not the verbal or parol agreement alleged by said Vietta Freeman was in fact agreed upon and entered into by her father and said William Jacks."

Before considering the claim that there was no proof to support the theory of a contract to adopt and to leave property, we must consider and construe the cross-petition itself. The cross-petition first alleges a certain contract and agreement between appellee's father and William Jacks and wife, by virtue of which her father turned over to them the full care, control and custody of her when she was a child, her father then and there releasing all right to consider her as his child, and delivering her to them in consideration of which and of her discharging her full duty to them as though she was their child, they agreed to take full care, control and custody of her as if she were their own child, and "agreed that they would give her their property at the time of their death," and to effectuate said intents and purposes, repeatedly *stated* that they intended to adopt her. So far nothing is said as to whether the agreement was in writing or oral, except that it is

alleged that they "stated" an intention to adopt. In paragraph three it is alleged:

"Said contract so entered into by said H. P. Large of the one part and said William Jacks and M. A. Jacks of the other part was evidenced by the following written instrument executed and delivered by said H. P. Large and said William Jacks and M. A. Jacks."

In paragraph six it is said: "It being understood in said contract that this defendant was to be treated by said William Jacks and wife as their child," and "would through life render to them the same love, affection, obedience and service as though she had been their own child." The cross-petition is very lengthy. In other portions of it there are allegations to the effect that the foster parents repeatedly reaffirmed and recognized "the terms of said contract" by which the appellee had been taken into the family. The appellants insist that "said contract" can only be intended to refer to the one "evidenced" by the memorandum.

If the written memorandum set out in the cross-petition had in fact been executed by both parties as alleged, the pleading would necessarily be construed as appellants contend, and all the statements as to what the contract embraced would necessarily go out of the pleading, and the pleader would be held bound by the writing. Obviously the court, when it came to examine the memorandum, and saw that it had not been executed and delivered by William Jacks and his wife, or either of them as alleged, but on the contrary had been executed and delivered solely by H. P. Large, gave a liberal construction to the language alleging that the "said contract was evidenced" by the written instrument, and came to the conclusion that it should be construed as though the appellee had attempted to plead her evidence and to refer to the memorandum as evidence of the terms of an oral agreement. Ordinarily the rule is that where the substance of an agreement is stated, it is presumed to be in writing, in the absence of any statement to the contrary. This rule, however, should not be applied arbitrarily to one part of the pleading. When we read all the cross-petition together as one paragraph (and we see no reason for attaching any importance to the numbering of them), there is ground for construing the pleading as relying upon an oral agreement, because the writing referred to shows

on its face that it was not an agreement between the parties, although it might be evidence that an agreement of some kind existed. The pleading is inartistically drawn, and contains inconsistent statements which might have furnished grounds to support a motion to make more definite and certain, or to require an election between a contract in writing and one in parol. Construing the entire pleading together, we think there was no error in admitting proof of a parol agreement.

The other principal contention is that the court submitted the case to the jury on an erroneous theory, one not alleged in the cross-petition, and on which there was no proof. The court expressly charged the jury to return a verdict against the appellees unless they further found, from a preponderance of the evidence, that her father "entered into a verbal or parol contract with said William Jacks in his lifetime, on or about January 14, 1878, in substance that in consideration of the relinquishment to said William Jacks by said H. P. Large of all his rights in and to said Vietta Freeman as her father, he, the said William Jacks, would receive, keep and care for her as his own child to all intents and purposes, and adopt her and make her his heir at law, and that said H. P. Large observed and complied with the terms and conditions of said contract on his part, and that said Vietta Freeman fully performed all the requirements and conditions imposed upon her by said contract."

This instruction, together with the one in which the court charged that the memorandum written in the black book "would not of itself entitle" appellee to recover, must be considered the law of the case, as the appellants contend. The cross-petition does not allege an agreement to adopt. It alleges that they repeatedly "stated" an intention to adopt her, but this was obviously referring to the period after she was taken into the family. We think it is also true that there is no evidence of an agreement to adopt, and it is conceded that there was no attempt to make a legal adoption.

The question then is, Was it error for the court to submit the issue of a contract to adopt in the absence of any claim in the cross-petition that such was the contract, and with no evidence upon which the jury could find that such a contract was made? Conceding that this and other instructions in

which the court likewise submitted the same issue to the
jury should not have been given, because there was no proof
in support of the issue, were the appellants prejudiced by
the instructions? It will be observed that the court, in at-
tempting to state the terms of the verbal contract relied upon,
used the phrase, "adopt her and make her his heir at law."
If the evidence was sufficient to sustain a finding of a verbal
contract by which William Jacks agreed to receive the appel-
lee into his family, keep and care for her as his own child and
make her his heir, and that such contract has been fully per-
formed on her part, her right to recover would be just the
same as though the contract had been as the court stated it.
If they had formally and legally adopted her she would have
sustained to them the relation of an heir, so that it is difficult
to see how the instruction could have prejudiced the appel-
lants. If, as the jury found, they agreed to take and raise the
appellee as their own child and heir, and she performed her
part of the agreement, her rights would be just the same as if
they had agreed to adopt as well as to make her their heir.
In our view of the matter no possible prejudice could have re-
sulted from the language in the instruction, which coupled an
agreement to adopt with an agreement to make appellee the
heir of her foster parents.

The instruction that the written memorandum itself was
not sufficient to entitle appellee to recover, but might be con-
sidered together with all the other circumstances in evidence
to determine whether a parol agreement had been made, was
proper. It has been held that an unsigned memorandum of a
proposed contract, made prior to an instrument finally exe-
cuted, may be received in evidence for the purpose of show-
ing the relation of the parties, where that will throw light on
their understanding with regard to the subsequent transac-
tion. (*Clark v. Townsend*, 96 Kan. 650, 153 Pac. 555.)

Finally it is urged that no witness testified to the terms of
any contract between William Jacks and the father of ap-
pellee.

If the memorandum had been in the handwriting of H. P.
Large; if it had been a letter addressed to and received and
retained by William Jacks stating, in the same language, the
terms upon which Large proposed to relinquish his rights to
the child, it would be at least some evidence of the terms of a

proposed contract; and if reinforced by proof of the subsequent action of William Jacks in taking the child into his family, his treatment of her thereafter as his own child, and his statements that the writing expressed the conditions upon which he received her, there would be sufficient circumstantial evidence to sustain the finding of the jury.

"It (the contract) may be established from such facts and circumstances, as will raise an implication, that it was made *and may have reinforcement from the evidence of the conduct of the parties at the time and subsequently.*" (Italics ours) (*Edson v. Parsons*, 155 N. Y. 555, 567, cited in *Anderson v. Anderson*, 75 Kan. 117, 127, 88 Pac. 743.)

Moreover, we have the fact that the memorandum was in the handwriting of William Jacks. It was written by him in a book, which the evidence shows was regarded as a family record; it was often referred to by William Jacks in the presence of friends and relatives of the appellee and other members of the family, as setting forth the the terms upon which the appellee had been surrendered when an infant by her father and had been taken into the family. Contracts of this nature may be established by circumstantial evidence. (*Bichel v. Oliver*, 77 Kan. 696, 95 Pac 396; *Smith v. Cameron*, 92 Kan. 652, 141 Pac. 596, and cases cited in the opinion.)

We discover no reason for setting aside the decision of the trial court and, therefore, the judgment will be affirmed.