No. 32,059

JOHN DWYER, Executor of the Estate of James Dwyer, Deceased, *Appellant,* v. HARRY R. SULLIVAN and NELLIE SULLIVAN, *Appellees;* RUSSELL SMITH and IRENE SMITH, *Appellants.*

(41 P. 2d 1028)

Opinion filed March 9, 1935.

*Edward T. Riling, John J. Riling,* both of Lawrence, *J. O. Emerson* and *I. F. Bradley, Jr.,* both of Kansas City, for the appellants.

*David F. Carson,* of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover on two promissory notes executed by Harry R. Sullivan and his wife and to foreclose a mortgage given to secure their payment. The money was loaned by Dwyer to Sullivan and the notes were payable to James Dwyer, who is now deceased.

Dwyer owned a farm in Leavenworth county and was engaged in carrying it on. The Sullivans lived some distance away and had

served him, it is said, for about eight years, going out to the James Dwyer farm to make settlements with tenants and make a division of the products of the farm. James Dwyer had agreed that the notes would not be enforced against him by reason of the services he had rendered. When the suit was brought against the defendants they alleged that the services were performed before and after the execution of the notes and mortgage; that they accepted the offer of James Dwyer and continued to serve him, going out to the farm to help him settle disagreements with the tenant and keep accounts against the tenant, going out there about twenty-five times each year. James Dwyer ultimately moved to Lawrence, where he died. But Sullivan had continued to do this work for Dwyer until his death.

The tenant on the farm of the deceased James Dwyer was a brother of the defendant. The renting arrangement between them was not definitely shown, but the settlements indicated that the rent was settled on the halves. They had corn, wheat, oats and milk, and the eggs were divided and settled for frequently, and this was done by Sullivan, it seems, for about four or five years. He says it was done on the promise that the notes should be surrendered and not enforced against him. When James Dwyer died John Dwyer was named as executor of his will, and the notes and mortgages were found among the papers. The will disposed of the property, giving it to nephews and nieces of the deceased. The power and authority of the executor is not in dispute and there is no dispute that the notes and mortgages were written and signed by Sullivan and his wife.

The chief contention is that James Dwyer agreed to give Sullivan the notes and mortgages sought to be foreclosed, for the services he had rendered and was rendering for him. The court permitted the defendant to amend his answer to correspond with the proof offered, and the objection to it was overruled. There had been a partial distribution of the estate to the persons named in the will other than Mr. Sullivan, and it was said that he was to get 1/56th of the property. There were other assets to distribute, but they could not estimate what would go to each. A demurrer to the evidence introduced was overruled and defendant gave evidence in rebuttal of that which had been produced by the plaintiff.

Proof was offered by plaintiff that Sullivan had sought to raise money to pay off the mortgage, but had not succeeded. Finally,

when the uncle died, the suit was brought on the note and mortgage. The summer before James Dwyer died he directed that the mortgage due be collected. In the course of the trial the court remarked on an objection to evidence:

"Well, the evidence of one of the witnesses, Hubert Sullivan, is that at the time this note and mortgage was made between the parties, that that $1,500 should be the property of the defendant in consideration of certain services he was to perform; and whether you say it was made before or at the time the note and mortgage was made, or whether it was afterward stated that it would be the defendant Sullivan's money, and that it should not be enforced against him, I don't think that makes much difference. I think the pleading is sufficient so that an amendment can be made to it, stating more fully, more definitely, and leaving us in no doubt as to what was intended."

Leave to answer was granted. The objection was overruled and the testimony admitted. There was a conflict in the testimony and plaintiffs insist that that offered by them is more credible than that produced by defendants, and that defendant's testimony is not reasonable or convincing. It is said that the agreement not to enforce the notes and mortgages in consideration of the services rendered and required to be rendered could not be made legally, and that a statement in an ordinary conversation for the cancellation or nonenforcement of a note which was not reduced to writing was not effective. In *Smith v. Cameron,* 92 Kan. 652, 141 Pac. 596, a similar contract was upheld, and it was there decided:

"An oral agreement of a sister to remove from her parents' home and live with her brother as his housekeeper and to care for him, upon his promise that she shall have his property at his death, when faithfully kept by her, affords solid grounds for the exercise of the power of a court of equity by a decree for specific performance." (Syl. ¶ 1.)

In the case of *Jacks v. Masterson,* 99 Kan. 89, 160 Pac. 1002, the following was said:

"In a suit for partition of real estate between the collateral heirs of a deceased person, the appellee filed a cross petition in which she claimed to be the owner of the real estate by virtue of the full performance on her part of a contract, which she alleged was entered into on the one part by the deceased and his wife in their lifetime, and on the other part by her father when she was a child ten months old, by which her father surrendered to them full control and custody of her in consideration of which they agreed to take her into their family as their own child and heir. The cross petition then alleged 'that said contract so entered into . . . was evidenced by the following written instrument executed and delivered by the parties, and set out a copy of the instrument which showed on its face that it had been executed and delivered by her father alone, although in the handwriting of the owner

of the real estate. *Held*, that the trial court properly construed the cross petition in its entirety as stating a cause of action founded upon a parol agreement, and as though it had alleged the existence of the written memorandum as some evidence of the terms of such parol agreement." (Syl. ¶ 1.)

The services, it appears, were rendered for a considerable period; they were of importance and were apparently satisfactory to Dwyer. The only objection he appears to have made was that he wished to get rid of his tenant, and Mr. Sullivan was not favorable to that action.

The court concluded that the services were performed for a series of years, that they were important, that it was a matter of contract that the notes and mortgages were to be given to the Sullivans for the services performed. One of the defendant's witnesses, when asked what services he knew of having been performed by Sullivan, said, in substance, that there were corn, wheat, oats, milk and eggs to be figured up and a division thereof made. The tenant was collecting the eggs that were brought in and the settlements were made, dividing them frequently. The tenant was practically deaf, which made it more difficult. The son said he was out there and heard three or four settlements made.

The contract, as we have seen, could be made. The conflict in the testimony was marked and sharp and depended upon which side was the most worthy of belief. The court heard the testimony of the witnesses, observed their manner in giving testimony, and had a better opportunity than we have to determine that question. It has been held that the services were performed, the consideration for such services being that the note and mortgage should not be enforced against them, and, under the circumstances, the decision of the court is held to be controlling. We therefore hold that the testimony was sufficient to uphold the decision of the district court.

The court held that an option contract had been made by the Sullivans with the Smiths and that they had an equity of redemption in the land. They were in default on their option and had not made the payments to keep the option in force, and the court therefore held that it should be canceled. It was directed that if the Smiths would make the payments within six months from that date they would be entitled to a deed, but if they failed to make payments their rights would cease. The default in the option contract continued, and it was held that the Smiths were barred, and title to the land was quieted in the Sullivans as against the Smiths.

Our view is that the judgment of the district court should be and it is affirmed.

THIELE, J. (dissenting): I cannot concur with the court's disposition of this appeal.

The original answer of the Sullivans alleged no contract for services, but that the mortgage in question had been given to them by James Dwyer in his lifetime in appreciation of services previously rendered in connection with decedent's real estate, and there was testimony of Sullivan's son tending to show an understanding that the note and mortgage were not to be paid. Apparently anticipating that there would be a failure to prove delivery, during the course of the trial the Sullivans amended their answer to allege a contract that for the performance of the services the mortgage should not be enforced against them. Notwithstanding this claim, it was undisputed by the Sullivans that they paid interest on this mortgage during the lifetime of Mr. Dwyer as well as one payment of interest after his death. Mr. Dwyer died January 9, 1932, and shortly thereafter his will was admitted and an executor appointed. On March 25 Sullivan wrote the executor's attorneys, sending them an insurance policy on the mortgaged premises, and saying he would see them shortly regarding payment of interest. In August of the same year he again wrote the attorneys, advising that the property securing the loan was worth about half of its amount, and offering to pay $800 in settlement.

This evidence, considered in connection with the fact that the mortgage was made in April, 1928, that on October 10, 1928, James Dwyer executed a power of attorney to his nephew James E. Dwyer, to look after his real estate, who did so, and that the services claimed to have been performed by the Sullivans were substantially all performed before the mortgage was given, leads me to the conclusion that there was no clear and satisfactory proof of Sullivan's contention that he was to render services for which he should receive the mortgage. If he did perform any service for which he ought to be compensated, its value should have been determined by allowance in the probate court.

HARVEY, J., concurs in this dissent.